Singh, J.
After defendant Pinette Group, LLC ( “Pinette Group”) vacated a commercial space in Winchester, Massachusetts and stopped paying rent less than two years into a three-year lease, plaintiff Alexan Kavlakian, as trustee of the Berkshire Realty Trust (“Berkshire”), brought this action against Pinette Group, as well as its guarantor, defendant Angela R. Pinette (collectively, “Pinettes”), to recover the remaining rent due under the lease. The trial court awarded Berkshire $48,047.42 in damages upon summary judgment, and the Pinettes have appealed. Because summary judgment should not have been entered in the face of disputed issues of material fact, including the Pinettes’ affirmative defenses, we vacate the judgment for Berkshire and return the case for trial.
*231 In the light most favorable to the Pinettes, we recount the following relevant facts.[3] Pinette Group entered into a three-year lease with Berkshire for the period of April 1, 2007 through March 31, 2010. Under the terms of the lease, Pinette Group was to use the premises as a retail Verizon wireless telephone and accessories store. Berkshire agreed to maintain the structure of the building within which the leased premises were contained. Berkshire had no obligation to provide utilities or equipment other than the utilities and equipment that were on the premises and provided at the beginning of the lease. Pinette Group was to hold Berkshire harmless from all loss occasioned by the use or escape of water, or bursting pipes, or any nuisance made on the leased premises, unless such loss was caused by Berkshire.
In October, 2007, the Pinettes began to notice that the heat provided by Berkshire was inadequate. There was a single radiator on the premises to heat the 4,000 square foot space, and that radiator was located in a loft above the retail space. As a result, it did not provide heat to the retail space below. As the Pinettes had no ability to regulate the heat, they complained to Berkshire. Berkshire provided a fan to blow the heat from the radiator, but this did not provide any additional heat. The Pinettes installed space heaters, but they could not be used because they tripped the circuit breakers, causing power outages. The heating problem persisted throughout the winter of 2007/2008. In the fall of 2008, Berkshire engaged a plumber, who repositioned the radiator and extended the steam line. Subsequently, the radiator malfunctioned several times and spewed rusty colored water into the premises, damaging the Pinettes’ property. The plumber returned and changed the regulator, but then the radiator failed to produce any heat. The Pinettes continued to use space heaters, repeatedly tripping the circuit breakers, through the winter of 2008/2009. Due to the persistent issue with lack of heat, the Pinettes were forced to close the business. They vacated the premises in January, 2009 with all rent paid through that date. They paid no further rent.
On January 6,2010, Berkshire brought suit seeking the remaining rent due under the lease in the amount of $38,747.00. On January 29, 2010, Ms. Pinette filed a pro se answer indicating that she had to close her business due to the problems caused by Berkshire’s inability to correct the heating issues. She specifically alleged that the retail space had become unsuitable for its intended purpose, that she was forced to vacate, and, therefore, that she did not pay any further rent. On February 1,2010, Berkshire served the Pinettes with requests for admissions. The requests sought the Pinettes’ admissions of the authenticity of the lease, Ms. Pinette’s authority to enter into the lease on behalf of Pinette Group, and Ms. Pinette’s liability as the guarantor. In addition, the requests sought the Pinettes’ admission that they did not pay rent after vacating the premises. The Pinettes did not answer the requests for admissions.
On July 13, 2010, new counsel for the Pinettes moved to dismiss on the grounds *232 that the amount in controversy was in excess of the $25,000.00 ceiling for District Court cases and that Berkshire had improperly brought the suit in the name of the trust, rather than in the name of a trustee on behalf of the trust. The court denied the motion on the basis that the Pinettes had failed to raise the amount-in-controversy issue in their answer, but made no reference to the issue concerning the misnomer of the plaintiff. As a result, the Pinettes filed a motion for judgment on the pleadings, arguing that the trust had no standing to sue in its own name. In response, Berkshire moved to amend its complaint to add the trustee. The Pinettes assented to the amendment, and the amended complaint was filed on November 15, 2010.
On November 26, 2010, the Pinettes filed a motion to dismiss the amended complaint and an answer to the amended complaint with counterclaims; both the motion and the answer raised the amount-in-controversy issue. Berkshire moved for summary judgment, and the Pinettes filed an opposition. On January 10,2011, the court denied the Pinettes’ motion to dismiss, allowed Berkshire’s motion for summary judgment, and dismissed the Pinettes’ counterclaims. The Pinettes contend on this appeal that the trial court erred with respect to each of these rulings.
1. The Pinettes first argue that the judge erred in denying their motion to dismiss the amended complaint because the amended complaint alleged that the amount in controversy exceeded the District Court ceiling of $25,000.00. General Laws c. 218, §19 provides that an action may proceed in District Court “only if there is no reasonable likelihood that recovery by the plaintiff will exceed $25,000.” Where a defendant timely objects to the matter proceeding in District Court and satisfies a judge that there is a reasonable likelihood that the plaintiff may recover more than $25,000.00, the judge “must dismiss the case.” Sperounes v. Farese, 449 Mass. 800, 806 (2007). Where there has been no timely objection, however, the court is free to exercise its discretion in deciding whether to dismiss, or retain the case. Id. at 807, citing G.L.c. 218, §19A.
In this case, Berkshire explicitly claimed damages in excess of $25,000.00 in its complaint. Therefore, the Pinettes were required to object either through a motion to dismiss pursuant to Mass. R Civ. P., Rule 12(b) (10), or in their answer. See Mass. R. Civ. P, Rule 12(h) (1) (B) (defense of improper amount of damages is waived if not raised in motion to dismiss or answer). In her pro se answer, Ms. Pinette failed to object to the case proceeding in District Court.[4] It was not until six months later that counsel for the Pinettes appeared and filed a motion to dismiss based on the amount in controversy. After that motion was denied, the Pinettes took the opportunity of Berkshire’s amended complaint to file another motion to dismiss and another answer raising the same issue.
Contrary to the Pinettes’ argument, the fact that Berkshire’s amended complaint may have provided an opportunity for the Pinettes to object by filing another motion to dismiss and another answer did not make the objection timely. Timeliness of the objection is measured from the time that the Pinettes should have known that the *233 amount in controversy was reasonably likely to exceed $25,000.00. Eleven months had elapsed since the filing of Berkshire’s complaint in which explicit notice was given regarding the amount in controversy. Given the passage of time and the relative simplicity of the issues involved, we cannot say that the judge abused her discretion in deciding to retain the case. See Sperounes, supra at 807 (listing factors judge should consider in exercising discretion, including time delay and nature of issues).
2. We agree with the Pinettes’ argument that the judge erred in allowing Berkshire’s motion for summary judgment in light of the existence of genuine issues of disputed material fact. See Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 622-625 (1990); Jackson v. Commissioner of Correction, 40 Mass. App. Ct. 127, 129-131 (1996). The judge’s reasoning in support of her allowance of summary judgment was the following: “Upon the Court’s 10/18/10 ruling that Plaintiffs Requests for Admissions be ‘deemed admitted,’ there is no genuine issue of material fact that remains.”[5] The requests for admissions, however, sought to have the Pinettes admit only what they did not dispute, i.e., the authenticity of the lease, Ms. Pinette’s authority to enter into the lease on behalf of Pinette Group, Ms. Pinette’s liability as the guarantor, and the fact that the Pinettes did not pay rent after vacating the premises. The disputed issue of material fact, raised in Ms. Pinette’s original answer and expounded upon in the answer to the amended complaint, was whether the Pinettes were constructively evicted and thereby excused from paying rent. Berkshire’s motion for summary judgment failed to acknowledge the Pinettes’ affirmative defense, arguing summarily that their answer did not contain “any legitimate defense.”
Constructive eviction is, of course, a legitimate defense to an action for rent pursuant to a commercial lease. See Wesson v. Leone Enters., Inc., 437 Mass. 708, 713-715 & n.15 (2002) (listing cases in which constructive eviction was found in commercial contexts). It has been defined as “[ajny ‘act of a permanent character, done by the landlord, or by his procurement, with the intention and effect of depriving the tenant of the enjoyment of the premises demised, or of a part thereof, to which he yields and abandons possession.’” Id. at 713, quoting Shindler v. Milden, 282 Mass. 32, 33 (1933). The landlord’s actual intent is irrelevant as it is presumed that a landlord intends the natural and probable consequence of what it did, what it failed to do, or what it permitted to be done. Id. at 714.
The Pinettes alleged persistent problems with a lack of heat provided by Berkshire that ultimately resulted in no heat during the dead of winter. They further alleged that the lack of heat made the premises unfit for its intended use as a commercial retail space. These allegations were supported by the uncontradicted affidavit of Ms. Pinette, and were sufficient to raise a defense of constructive eviction. Shindler, supra at 33-34 (landlord’s failure to provide heat rendered premises unfit for use as restaurant). As a result, genuine issues of material fact existed, and summary judgment should not have been entered for Berkshire.
3. Finally, the Pinettes argue that the judge erred in dismissing their counterclaims. There was no motion to strike, or to dismiss, the counterclaims, and the *234 judge made no findings concerning a dismissal of them. The docket reflects only that a judgment of dismissal of the counterclaims was entered “[ujpon allowance of Plaintiffs Motion for Summary Judgment.” Thus, it appears that the counterclaims were dismissed only because summary judgment had entered and not because those claims had been adjudicated in any manner.[6] Under the circumstances, we do not separately examine the propriety of the dismissal of the counterclaims. Because summary judgment was allowed in error, the dismissal of the counterclaims was also error.
The summary judgments for the plaintiff on the complaint and on the counterclaims are vacated, and this case is returned to the Woburn Division of the District Court Department for trial.
So ordered.

 We review the trial court’s ruling on summary judgment de novo. See Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011). On a motion for summary judgment, the facts are to be taken in the light most favorable to the nonmoving party. Id. Here, the facts are taken from the uncontradicted affidavit of Angela R. Pinette, submitted in opposition to Berkshire’ motion for summary judgment.

 Although Ms. Pinette was acting without counsel at the time of her answer, she is held to the same standard as any litigant who is represented by an attorney. Baldyga v. Dudley Div. of the Dist. Court Dep’t, 449 Mass. 1012 n.2 (2007).

 Although there is no entry on the docket of any motion concerning requests for admissions, the date that the judge apparently deemed the requests to be admitted coincides with a pretrial hearing date.

 We note that all claims, as well as counterclaims, must be adjudicated prior to the entry of judgment See Dolores v. Gustafson, 2009 Mass. App. Div. 267, 272 & n.4 (2009) (where judge entered summary judgment without ruling on defendant’s counterclaims, case returned to trial court for adjudication of those counterclaims).